**SO ORDERED.**

**SIGNED this 29th day of May, 2015.**



*Dale L. Somers*
Dale L. Somers
United States Bankruptcy Judge

___

Opinion Designated for Electronic Use, But Not for Print Publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re: | |
| ALAN EUGENE JACKSON, | CASE NO. 14-20808-13 |
| DEBTOR. | CHAPTER 13 |

# OPINION DENYING DEBTOR'S PLAN PROPOSAL TO ACCELERATE PAYMENTS ON HIS VEHICLE, RATHER THAN PAY MORE TO HIS UNSECURED CREDITORS

This matter is before the Court for a decision resolving the Chapter 13 Trustee's objection to the Debtor's proposed plan. Trustee W.H. Griffin appears on his own behalf. The Debtor appears by counsel Hilliard L. Moore of Moore & Associates, LLC. The Court has reviewed the relevant materials and is now ready to rule.

**Facts**

In September 2013, the Debtor bought a 2013 Nissan Titan pickup truck, financing $34,630.50 of the purchase for 72 months at 6.79% interest. On April 10, 2014, he filed a Chapter 13 bankruptcy petition. Although he reported on his Schedules that he owed $32,357 on the truck and it was only worth $29,000, the hanging paragraph at the end of § 1325(a)(9) would require any Chapter 13 plan he filed to propose paying the debt in full because he bought the truck less than 910 days before filing bankruptcy. When he filed his petition, he was current on the debt secured by the truck, and owed approximately 65 more payments of $588.59 per month on it. Nissan Motor Acceptance filed a proof of claim showing the Debtor owed $32,411.44[1] on the truck as of the petition date. Again, because this is a 910-vehicle debt, Nissan would have to be paid 100% of the undersecured portion of its claim against the truck, plus interest, a total of $3,411.44 in principal.

On his Schedules, the Debtor listed (1) two debts secured by vehicles (the Nissan debt and another one), both of which were undersecured, (2) an unsecured priority debt to the IRS of $5,383.17, and (3) general unsecured debts of just under $15,000. He proposed to keep his Nissan truck, but surrendered the other vehicle; after the creditor liquidated the car, it filed a deficiency claim for $8,744.18.[2] The IRS filed an amended claim for an unsecured priority claim of $5,099.63, and a general unsecured claim of

---

[1]The parties' stipulation mistakenly says that the proof of claim showed the debt to be $34,411.44.

[2]The parties had already filed their briefs in this matter before the creditor filed its amended claim.

$311.91. The other unsecured claims that were filed totaled $9,748.73. One of these is a $7,099.07 student loan debt that will presumably be excepted from discharge by § 1328(a)(2) and § 523(a)(8). All together then, the filed, nonpriority unsecured claims totaled $18,804.82.

The Debtor's income is above the median for the State of Kansas, which means he must propose a 60-month plan, but the Chapter 13 means test calculation shows he has a negative disposable income. His Schedules I and J show his income exceeds his expenses by $839.30 per month. He filed a Chapter 13 plan in which he proposes to pay $834 to the Trustee. Under the plan, his debt to Nissan would be modified by shortening the term to 60 months, reducing the interest rate to 4.75%, and increasing his monthly payments to $608. This would pay his full debt to Nissan by the end of his plan.

The Trustee objected that the Debtor's plan was not proposed in good faith. The Trustee argued the Debtor should treat his debt to Nissan as a long-term debt, and pay it outside the plan according to its original terms. The Trustee says the Debtor's plan would provide only $2,653 for distribution to his unsecured creditors, but paying the Nissan debt outside the plan and without modification would increase the amount available for unsecured creditors to $5,805. The Court is unable to determine how the Trustee calculated that an additional $3,152 would be available for unsecured creditors, but the Debtor has not explained any dispute with the amount, so the Court will accept it as correct. This amount is not inconsequential in light of the total of the allowed unsecured debts in this case. The parties did not present any calculation showing how much of this

3

Case 14-20808    Doc# 32    Filed 05/29/15    Page 3 of 8

increase, if any, would actually be distributed to the general, nonpriority unsecured creditors.

**Discussion**

The Debtor contends § 1322(b)(2) permits him to modify Nissan's secured claim as he has proposed, but the Trustee counters that for the Debtor's plan to be proposed in good faith as required by § 1325(a)(3), the Debtor must treat Nissan's claim under § 1322(b)(5) and maintain payments on the debt, which has a term longer than the 60 months the Debtor's plan must run. The Debtor argues § 1322(b)(2) and (5) give him the option either to modify Nissan's secured claim and treat it over the term of his plan, or to pay the claim outside the plan, and if he chooses to modify the claim and treat it over the term of the plan, he must pay the full amount due within the plan term. He contends there is nothing preventing him from treating Nissan's claim as he has proposed. In short, all he offers to support his proposal is the assertion there is nothing in the Bankruptcy Code explicitly prohibiting it. The Court believes that under the totality of the circumstances of this case, that is not good enough. Section 1325(b)(1) allows debtors who cannot pay their unsecured creditors in full to pay them something less so long as what is being paid into the plan is "all of the debtor's projected disposable income." It does not say a debtor can manipulate payments solely for his own benefit and to the significant detriment of the unsecured creditors.

The Trustee bases his objection on § 1325(a)(3), which requires a Chapter 13 plan to be "proposed in good faith and not by any means forbidden by law." In 1983, in

4

*Flygare v. Boulden*, the Tenth Circuit said "good faith" must be determined on a case-by-case basis considering the totality of the circumstances, and identified eleven non-exclusive factors courts should consider, along with any other relevant circumstances.[3] The Circuit later suggested in a footnote that some of the *Flygare* factors had been subsumed by subsequent amendments to the Bankruptcy Code, narrowing the "good faith" focus to "factors such as whether the debtor has stated his debts and expenses accurately, whether he has made any fraudulent misrepresentation to mislead the bankruptcy court, or whether he has unfairly manipulated the Bankruptcy Code."[4] The Court is convinced that under the facts of this case, the Debtor's plan would unfairly manipulate the Bankruptcy Code by giving him a benefit at the expense of his unsecured creditors in a way not explicitly authorized by the Code.

While the Debtor undoubtedly needs his vehicle in order to go to and from work and otherwise comply with any plan that might be confirmed, he is proposing to pay more to Nissan each month than his prepetition contract requires him to pay in order to keep the vehicle. The reduction in the interest rate would result in some savings for the Debtor but would not in any way benefit his unsecured creditors. From the Debtor's perspective, since his plan shows he thinks he can afford to pay $834 per month toward the obligations being treated under the plan, the proposal to accelerate the debt on his truck is nothing more than an accounting maneuver that would enable him to exit bankruptcy with a free-

---

[3] 709 F.2d 1344, 1347-48 (10th Cir. 1983).

[4] *In re Cranmer*, 697 F.3d 1314, 1318 n. 5 (10th Cir. 2012).

and-clear truck instead of one subject to five more monthly payments. The increase in his monthly payment that will accomplish this for him is money that would otherwise go to his unsecured creditors.

The Debtor has cited no case in which a court has confirmed such a plan. On the other hand, the Trustee did not cite any case in which a court declined to confirm such a plan. The Court has found several cases that refused to allow debtors to accelerate payment of secured debts to the detriment of their unsecured creditors, finding such action to constitute unfair discrimination, to demonstrate a lack of good faith in proposing the plan, or to be an impermissible attempt to manipulate and abuse the bankruptcy system.[5]

The Court found one case overruling a Chapter 13 trustee's objection that a plan under which the debtor would pay more each month on a secured debt than was required by the parties' prepetition contract had not been proposed in good faith, *In re Elrod*.[6] In that case, the debtors proposed to pay $325 per month on a second mortgage on their home, about $25 more than their prepetition payment amount, and to reduce the interest

---

[5] *In re Pearson*, 398 B.R. 97, (Bankr. M.D. Ga. 2008) (plan proposing to accelerate payments on secured debts and pay them in full before paying anything to unsecured creditors was not proposed in good faith); *In re Liles*, 292 B.R. 138, 141 (Bankr. E.D. Tex. 2002) (plan proposing to pay almost $980 per month instead of $408 required on secured debt not proposed in good faith because it would take money from unsecured creditors to accelerate secured debt for debtors' benefit, and unfairly discriminated between secured and unsecured creditors); *In re Crussen*, 264 B.R. 723, (Bankr. W.D. Okla. 2001) (plan proposing to pay extra $650 per month on second mortgage to pay it off in 36 months while paying unsecured creditors only 44% was example of attempt to manipulate and abuse bankruptcy system in manner court would not permit).

[6] 270 B.R. 258, 261-63 (Bankr. E.D. Tenn. 2001).

6

rate to 10% — the court did not say what the interest rate had been, just that 10% was "much lower than the pre-petition mortgage rate."[7] The court said the higher payment and lower interest rate would let the debtors pay off the debt much faster than if they left the mortgage unchanged.[8] In overruling the trustee's good faith objection, the court appears to have been influenced by the facts that the debtors were only required to propose a three-year plan but had proposed a five-year one, and that the unsecured creditors would be paid more money during the plan's last two years than the extra $25 per month would give the mortgage holder during the first three years of the plan. The court said the trustee wanted the debtors to pay the extra $25 per month to their unsecured creditors, which would give the creditors 5% more on their claims than the 25% the debtors' plan as proposed would pay them.[9] Finding no bad faith, the court noted the mortgage holder had accepted the debtors' proposed plan, in effect refinancing the mortgage, and the changes "would benefit the debtors greatly by reducing the total amount they must pay to retire the mortgage."[10] The court concluded, "The proposed plan, far from being in bad faith, represents an unusually good financial rehabilitation of the debtors at very little cost to the unsecured creditors."[11]

---

[7]*Id*. at 259-60.

[8]*Id*. at 260.

[9]*Id*. at 262.

[10]*Id*. at 263.

[11]*Id*.

7

Under the facts presented here, the Court agrees with the courts that rejected efforts to accelerate payments on secured debts through Chapter 13 plans. In this case, the Debtor's plan goes too far at the expense of the unsecured creditors. The Court declines to rule on the question whether the Debtor can pay the secured creditor through his plan because the Trustee did not brief this issue.

**Conclusion**

For these reasons, the Court rules the Debtor's Chapter 13 plan cannot be confirmed as proposed. Ordinarily, a debtor cannot use money that would otherwise go to his or her unsecured creditors in order to accelerate the payments on a secured debt and pay it off faster than the prepetition security agreement requires.

# # #